## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:06CR316** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND ORDER** |
| | ) | |
| **JOSE G. VALDIVIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The matter before the Court is the Report and Recommendation (Filing No. 29), issued by Magistrate Judge F.A. Gossett, recommending denial of the Motion to Suppress (Filing No. 14) filed by the Defendant, Jose Valdivia ("Valdivia"). Valdivia has filed a Statement of Objections to Magistrate Judge's Recommendation (Filing No. 38) and a supporting brief (Filing No. 39), as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Valdivia is charged in Count I of the Superseding Indictment (Filing No. 31) with possession with intent to distribute five grams or more but less than fifty grams of methamphetamine; in Count II with possession with intent to distribute less than five-hundred grams of cocaine; and in Count III with possession of a firearm in furtherance of a drug trafficking crime. In his Motion to Suppress, Valdivia seeks an order suppressing any and all evidence derived pursuant to the September 2, 2006, traffic stop.[1]

---

[1]The original Motion to Suppress sought to exclude (1) any and all evidence produced from the search and seizure of property from the vehicle and person of Valdivia after the September 2, 2006, traffic stop; (2) any and all statements made by Valdivia after the September 2, 2006, traffic stop; and (3) any and all evidence produced from the subsequent search of Valdivia's residence. (Filing No. 14, p. 1). However, it was noted at the suppression hearing that "the motion to suppress will be a little bit shorter . . . . The issue is going to go to probable cause for the stop and search, and then anything subsequent to that, [the Defendant is] looking to exclude based on the fruit of the poisonous tree." (Filing No. 35, 3:22 to 4:2).

Following an evidentiary hearing, Judge Gossett issued a Report and Recommendation, in which he concluded that (1) the traffic stop was proper; (2) under the circumstances — a 2:20 a.m. traffic stop, a truck with opaque tinted windows, a driver who had suspiciously positioned himself, and the presence of what the officer believed to be a handgun box under the driver seat — a hypothetical officer could reasonably believe Valdivia was dangerous; (3) the search of the box was supported by reasonable, articulable suspicion based upon officer safety; and (4) after the Defendant was arrested, the vehicle was properly searched. (Filing No. 35, 65:8 to 71:16).  On the basis of these determinations, Judge Gossett recommended that Valdivia's motion be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), a court shall make a de novo determination of those portions of the report, findings, and recommendations to which a defendant has objected.  A court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations.  A court may also receive further evidence or remand the matter to the magistrate judge with instructions.

## STATEMENT OF FACTS

Judge Gossett provided a detailed account of the relevant events surrounding the traffic stop and the search of the vehicle.  The Court has considered the Defendant's suppression motion and brief in support; the government's brief in opposition; the hearing transcript; and the Defendant's statement of objections and brief in support.  Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Gossett's factual findings in their entirety.

On September 2, 2006, at around 2:20 a.m., Officer Daniel Gaskill ("Officer Gaskill") observed Valdivia's blue pickup truck traveling in an eastbound lane of I-80 near 42nd Street. Officer Gaskill observed that the truck was traveling at a low rate of speed, approximately 25 to 30 miles per hour, and that it swerved three or four times outside of its lane, which was a violation of Nebraska statute. Officer Gaskill turned on his police lights so that Valdivia would pull his truck over to the side, and about a minute later Valdivia pulled his truck into the gore area (the location where one or more lanes of the road diverge away from the previous direction of travel) of the downtown Omaha/Iowa split, between I-80 and I-480. Officer Gaskill noticed that the windows were tinted such that he could not see into the automobile. Because he could not see the number of persons or any movement, he called and waited for another officer to assist in the traffic stop. Officer Bobby Clark ("Officer Clark") arrived a few minutes later.

After Officer Clark arrived, he and Officer Gaskill walked toward the truck—Officer Clark approached the driver-side door and Officer Gaskill approached the passenger-side door. While Officer Clark asked Valdivia for his license and registration, Officer Gaskill looked into the truck and noticed two containers. The first was a camera case that contained no contraband. The second, located between Valdivia's calf and the front of the driver seat, was a box Officer Gaskill believed to be a gun box. Either Officer Clark or Officer Gaskill requested that Valdivia hand the box to Officer Clark. Officer Clark took the box and placed it on the bed cover of the truck. Officer Clark opened the box and found a nine millimeter Desert Eagle firearm. Valdivia was placed under arrest, and the rest of his truck was searched. Another firearm was found, along with narcotics and a large sum of money.

### ANALYSIS

The Defendant objects to Judge Gossett's Report and Recommendation — specifically, the Defendant objects to the legal conclusion that the search and seizure of property from the Defendant's vehicle on or about September 2, 2006, was not in violation of the Defendant's rights under the Fourth Amendment of the United States Constitution. (Filing No. 38, p. 1).

Protective searches, in the interest of officer safety, have long been held constitutional. *Michigan v. Long*, 463 U.S. 1032 (1983); *United States v. Shranklen*, 315 F.3d 959 (8th Cir. 2003). In *Shranklen*, the Eighth Circuit Court of Appeals held as valid an officer's search of a container he found underneath the passenger seat of an automobile. In that case, after making a traffic stop, the officer discovered that both the driver and the passenger had suspended licenses. After he placed the driver[2] and passenger in his patrol car, the passenger asked if he could retrieve a black pouch from underneath the passenger seat. The officer left the two men in his patrol car, found the black pouch, and opened it. It contained syringes and drugs. *Shranklen*, 315 F.3d at 960.

The *Shranklen* court first noted that there was no doubt that the officer feared that the pouch contained a weapon. "At any investigative stop—whether there is an arrest, an inventory search, neither, or both—officers may take steps reasonably necessary to protect their personal safety." *Id.* at 961. The pivotal inquiry, the court stated, "considers the

---

[2]In *Shranklen*, there was a question as to whether the driver had been arrested or merely issued a citation. Regardless, the court makes it very clear that "[b]ecause we decide this case without considering whether or not there was a valid search incident to arrest, we do not reach the question of whether [the driver] was under arrest as a matter of law." *Shranklen*, 315 F.3d at 960 n.1.

specific and articulable facts and the inferences that arise from those facts." *Id.* That the suspect lacks immediate access to the weapon is of no consequence. *Id.* at 962. Further, "[o]pening the [container] outside of the car does not make the search less reasonable." *Id.* at 963. Finally, the fact the container is closed does not matter; "a valid *Long* search extends to closed containers, such as a pouch, that are found within the vehicle's passenger compartment." *Id.*

In this case, the specific and articulable facts, and the inferences that arise from those facts, demonstrate that the officers held a reasonable belief that Valdivia was dangerous and might gain control of weapons. First, I note that this case involves a valid traffic stop, and "'minimally intrusive weapons searches' at traffic stops are more likely to be reasonable because of the 'inherent danger' of traffic stops." *Id*. at 962 (quoting *United States v. Menard*, 95 F.3d 9, 11 (8th Cir. 1996)). Second, the placement of the box in the truck, and Valdivia's suspicious sitting position, indicate an attempt to conceal the box. *See id.* Further, Officer Gaskill recognized the box to be of the type that holds firearms. Finally, the fact that the incident occurred around 2:20 a.m., after Officer Gaskill witnessed behavior that could indicate some type of intoxication, buttresses a finding of reasonableness.

Pursuant to the Supreme Court's findings in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Long*, and the Eighth Circuit's findings in *Shranklen*, I will adopt Judge Gossett's Report and Recommendation and deny the Defendant's Motion to Suppress.

IT IS ORDERED:

1.      The Magistrate Judge's Report and Recommendation (Filing No. 29) is

        adopted in its entirety;

2.      The Statement of Objections to Magistrate Judge's Recommendation (Filing

        No. 38) is denied; and

3.      The Defendant's Motion to Suppress (Filing No. 14) is denied.

DATED this 9th day of May, 2007.


                                BY THE COURT:


                                s/Laurie Smith Camp
                                United States District Judge